**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **JOSEPH GUGLIELMO,** on behalf of himself and all others similarly situated, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Case No.: 1:19-cv-11197 (KPF)(KHP) |
| v. | : | |
| | : | |
| **NEBRASKA FURNITURE MART, INC.,** | : | |
| | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT NEBRASKA FURNITURE MART, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**
<u>**PURSUANT TO F. R. C. P. 12(b)(1) AND 12(b)(2)**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..........................................................................................................i

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 2

III.    LEGAL STANDARDS .............................................................................................. 5

        a.      Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)...................................5

        b.      Motion to Dismiss under Fed. R. Civ. P. 12(b)(2)...................................6

IV.     ARGUMENT .............................................................................................................. 7

        a.      The Complaint Must Be Dismissed Because Guglielmo Lacks Standing. ..............7

        b.      Guglielmo's Claims Are Moot or Will Be Moot Because NFM Has Remediated the Majority of the Alleged ADA Violations and Will Remediate the Remainder by the Status Conference. ...........................................................12

        c.      The Complaint Should Be Dismissed for Lack of Personal Jurisdiction...............15

                1.      Exercise of Jurisdiction over NFM Would Not Satisfy Federal Due Process Requirements. ...............................................................17

                2.      New York Has No General Jurisdiction over NFM...................................18

                3.      New York Cannot Assert Specific Jurisdiction over NFM. ......................19

        d.      The State Law and New York City Claims Must Be Dismissed. ..........................21

V.      CONCLUSION............................................................................................................ 21

CORE/3504102.0019/159167301.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011)..............................................................................................6

*APWU v. Potter*,
  343 F.3d 619 623 (2d Cir. 2003)........................................................................................6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999).............................................................................................16

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007).............................................................................................16

*Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular. Inc.*,
  No. 05 Civ. 9994(KMW), 2007 WL 747807 (S.D.N.Y. Mar. 9, 2007)..............................16

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985)...............................................17, 19, 20

*Clear Channel Outdoor, Inc. v. City of New York*,
  594 F.3d 94 (2d Cir. 2010)...............................................................................................12

*Daimler AG v. Bauman*,
  134 S. Ct. 746, 187 L.Ed.2d 624 (2014)..........................................................................18

*Del-Orden v. Bonobos, Inc.*,
  No. 17 Civ. 2744 (PAE) (S.D.N.Y. Dec. 20, 2017).........................................................5, 6

*Diaz v. Kroger Co.*,
  18-cv-7953, 2019 WL 2357531 (S.D.N.Y. Jun. 4, 2019)...............................................14, 18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)..................................................................................................6

*Eades v. Kennedy, PC Law Offices*,
  799 F.3d 161 (2d Cir. 2015)................................................................................................6

*F.O. v. New York City Dept. of Educ.*,
  899 F. Supp. 2d 251 (S.D.N.Y. 2012)..............................................................................15

*Family Internet, Inc. v. Cybernex, Inc.*,
  No. 98 Civ. 0637(RWS), 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999).............................16

CORE/3504102.0019/159167301.1

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
No. 04 Civ. 5238(GEL), 2005 WL 1500896 (S.D.N.Y. June 23, 2005) ................................17

*FW/PBS, Inc. v. Dallas*,
493 U.S. 215, 110 S. Ct. 596, 107 L.Ed.2d 603 (1990)............................................................8

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013)....................................................................................5, 12, 14, 15

*Giammatteo v. Newton*,
452 Fed. App'x 24 (2d Cir. 2011)........................................................................................5

*Griffin v. Department of Labor Federal Credit Union*,
912 F.3d 649 (4th Cir. 2019) ...................................................................................9, 10, 11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984).........................................................18

*Irish Lesbian & Gay Org. v. Giuliani*,
143 F.3d 638 (2d Cir.1998)..................................................................................................12

*Kallen v. J.R. Eight, Inc.*,
775 F. Supp. 2d 1374 (S.D. Fla. 2011) ................................................................................15

*Keeton v. Hustler Magazine*,
Inc., 465 U.S. 770, 104 S. Ct. 1473, 79 L.Ed.2d 790 (1984)..................................................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...............................................................................................................7

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)..................................................................................5, 12, 13, 14

*Marsalis v. Schachner*,
No. 01 Civ. 10774(DC), 2002 WL 1268006 (S.D.N.Y. June 6, 2002)...................................16

*Mendez v. Apple Inc.*,
18-cv-7550-LAP, 2019 WL 2611168 (S.D.N.Y. Mar. 28, 2019)......................................11, 12

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)....................................................................................................6

*Shipping Fin. Servs. Corps. v. Drakos*,
140 F.3d 129 (2d Cir. 1998)..................................................................................................6

*Sikhs for Justice v. Nath*,
893 F. Supp. 2d 598 (S.D.N.Y. 2012).....................................................................................6

iii

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006)................................................................................16

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...............................................................7, 8, 9, 10

*In re Terrorist Attacks on September 11, 2011*,
    714 F.3d 659 (2d Cir. 2013)................................................................................6

*Van Wie v. Pataki*,
    267 F.3d 109 (2d Cir. 2001)................................................................................13, 14

*Walden v. Fiore*,
    134 S. Ct. 1115, 188 L.Ed.2d 12 (2014) ........................................................19, 20

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980).........................................17

*Yandow v. Kronau*,
    474 Fed. App'x. 797 (2d Cir. 2012)................................................................................12

## Statutes

28 U.S.C. § 1367 ................................................................................................21

42 U.S.C. § 12205 ................................................................................................15, 21

## Other Authorities

C.P.L.R. § 302(a) ................................................................................................16, 17

Fed. R. Civ. P. 12(b)(1)................................................................1, 5, 6, 11, 12, 14, 15

Fed. R. Civ. P. 12(b)(2)................................................................2, 6, 15, 20

CORE/3504102.0019/159167301.1

I.     **INTRODUCTION**

In one of *one hundred and fifteen* (115) nearly identical lawsuits filed by Plaintiff in this Court since October 30, 2019, Joseph Guglielmo ("Guglielmo") alleges that Defendant Nebraska Furniture Mart Inc.'s ("NFM") website "is not equally accessible to blind and visually-impaired customers" and violates the Americans with Disabilities Act, without alleging specific injury to Guglielmo.  Complaint at ¶ 4.  The Complaint must be dismissed for several reasons.

First, Guglielmo lacks standing to sue because he cannot demonstrate that he has suffered an injury-in-fact, nor can he demonstrate a future injury that is actual or imminent.  While Guglielmo alleges that NFM has violated the Americans with Disabilities Act ("ADA"), procedural violations of a statute alone do not confer standing nor can they establish a concrete injury.  In fact, it was impossible for Guglielmo to be injured by these violations because it was impossible for him to make a purchase from the NFM website regardless of whether he was sighted.  In view of this, NFM has not articulated *any* concrete injury sufficient to confer standing, and the Complaint fails this necessary element.

Second, NFM has remedied the alleged violations of the ADA made in the Complaint. Further, NFM has taken steps to ensure that its website is compliant with the Web Content Accessibility Guidelines ("WCAG"), the WCAG 2.0 standard.  Therefore, as the alleged violations have been remedied, there is no likelihood of repetition and the allegations are moot. Because of either lack of standing or mootness, NFM submits that the First Cause of Action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  While the Complaint alleges additional claims under the New York City Human Rights Law and seeks declaratory relief under the ADA and the New York City Human Rights Law, dismissal of the federal claim would require dismissal of these secondary claims for lack of subject matter jurisdiction.

1

Further, NFM is a Nebraska corporation with headquarters in Omaha.  NFM is not subject to general or specific jurisdiction in this District of New York (the "District").  Therefore, the Complaint must also be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Because of these incurable deficiencies in the pleading, NFM respectfully submits that the Complaint be dismissed in its entirety.

## II.   STATEMENT OF FACTS

At all relevant times, Guglielmo was a resident of Suffolk County, New York.[1]  Complaint at ¶ 11.  NFM is a Nebraska Corporation headquartered at 700 S. 72nd Street, Omaha, Nebraska 68114.  Complaint at ¶ 13; Declaration of Jeffrey Douglas ("Douglas Decl."), attached hereto as **Exhibit A** at ¶ 4.  NFM also has five physical stores in four locations.  *Id.*  Two stores are located in Omaha, Nebraska, at the same location; one is located in Kansas City, Kansas; one is located in Des Moines, Iowa; and one is located in the Colony, Texas, which is in the Dallas-Fort Worth area.  *Id.*  NFM is a retailer focused on improving customer lifestyles with a large offering of inspiring products for the home.  *Id*. at ¶ 3.

NFM has no physical presence or operations in this District or in the State of New York.  *Id*. at ¶ 4.  NFM's headquarters are in Omaha, Nebraska, approximately 1,240 miles from the District.  *Id*.  NFM owns and operates a website available at www.nfm.com ("NFM Website").  Complaint at ¶ 5; Douglas Decl. at ¶ 5.

Guglielmo alleges that he is visually-impaired and legally blind and requires screen-reading software to read website content on his computer.  Complaint at ¶ 2.  Guglielmo also alleges that the NFM Website "is not equally accessible to blind and visually-impaired customers" and therefore violates the ADA.  Complaint at ¶ 5.  Guglielmo alleges that he visited

---

[1] Suffolk County is located in the Eastern District of New York.

CORE/3504102.0019/159167301.1

the NFM Website to "make a purchase" on "multiple occasions" in December 2019.  Complaint at ¶ 24; Douglas Decl. at ¶ 10.

NFM has explicit policies that would prevent Guglielmo or a similar customer residing in New York from successfully making such a purchase.  Douglas Decl. at ¶ 10.  NFM provides two ways for visitors to the NFM Website to make purchases from their homes.  *Id.* at ¶ 5.  First, visitors who reside within a 300-mile radius of any NFM store can obtain direct delivery using NFM branded trucks.  *Id.* at ¶ 6.  This method of purchase is available to customers within that radius who use a major credit card or an NFM store credit card ("NFM Credit Card" or "NFM Card").  *Id.*  Guglielmo lives at a minimum of 1,100 miles from the nearest NFM store which is located in Des Moines, Iowa.  *Id.*  Per NFM's policies, Guglielmo could not obtain delivery from the NFM Website using the direct delivery method.  *Id.*  Second, NFM allows certain customers to ship products to certain locations outside the 300-mile radius *if* the customer has an NFM Card.  *Id.* at ¶ 7.  When shipping in this manner, NFM utilizes third-party shipping services including UPS and common carriers.  *Id.*  By NFM's policies, an NFM Card is only available to customers residing in one of the following thirteen (13) states: Nebraska, Iowa, Minnesota, South Dakota, Missouri, Kansas, Arkansas, Louisiana, Texas, Oklahoma, Arizona, Illinois, and Colorado.  *Id.*  If an NFM Website visitor resides outside of the thirteen states in which an NFM Card is available (such as a resident of New York) attempts to apply for an NFM Card from the NFM Website, he or she will be unable to complete the application and will receive an error message on the NFM Website.  *Id.*  A New York resident cannot obtain an NFM Card by contacting NFM by phone, mail, or otherwise.  *Id.*  Similarly, if a  NFM Website visitor residing outside of these thirteen states attempts to use a regular credit card (other than the NFM Card) to make a purchase, the NFM Website will present an error message indicating that NFM cannot

CORE/3504102.0019/159167301.1

process the order.  *Id.*  Finally, although customers within the thirteen states can place orders for pickup at an NFM Store, a customer outside those states cannot do so.  *Id.*  Because of these policies, a New York resident cannot obtain an NFM Card which is necessary for making a purchase within New York state.  *Id.* at ¶ 8.  In summation, a new NFM customer could not order products from the NFM Website for shipment or delivery because he or she is a New York resident.  *Id.*

For the past several years, NFM has invested significant resources in making its NFM Website accessible.  *Id.* at ¶ 11-12.  Today, the NFM Website has no known accessibility issues like those alleged by Guglielmo.  *Id.* at ¶ 19.  In the summer of 2020, the NFM Website is scheduled to have a redesign.  *Id.* at ¶ 13.  After the redesign, NFM will utilize a third-party consultant who will certify that the NFM Website complies with the most current version of the WCAG.  *Id.*

Prior to filing the Complaint, Guglielmo did not contact NFM or notify them that he had trouble accessing the website or needed product information or assistance.  *Id.* at ¶ 14.

Guglielmo claims in the Complaint that he accessed the NFM Website "on multiple occasions" and one time in December 2019 "to make a purchase."  *Id.* at ¶ 15; Complaint at ¶ 24. Guglielmo also claims to have been "denied a shopping experience similar to that of a sighted individual" because of four alleged issues with the NFM Website: (1) the lack of alternative text, "the invisible code embedded beneath a graphical image," (2) the lack of an "add a label or title attribute" for each field, (3) pages with the same title elements, and (4) "a host of broken links, which is a hyperlink to a non-existent or empty webpage."  Complaint at ¶¶ 24-29; Douglas at ¶ 15.

CORE/3504102.0019/159167301.1

Guglielmo did not identify any specific portions of the NFM Website that demonstrated such issues. Douglas at ¶ 16. To identify any potential accessibility issues on the NFM Website, NFM used auditing tools to identify issues relating to Guglielmo's allegations. *Id.* NFM identified very few cases on the NFM Website that reflected the problems alleged by Guglielmo. *Id.* at ¶ 17. For example, the audit identified only five broken links, accounting for an error rate of approximately .00961%. *Id.* The audit also determined that over 99% of the web pages had label and title elements and more than 95% of the images had alt tags. *Id.* Despite the very low rate of error, NFM resolved each of the issues identified in the audit that related to Guglielmo's claims. *Id.* NFM believes it has resolved each and every issue identified by the Complaint. *Id.* at ¶¶ 17-18.

## III.   LEGAL STANDARDS

### a.   Motion to Dismiss under Fed. R. Civ. P. 12(b)(1).

This Court may properly dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1), "when the district court lacks that statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Article III, § 2 of the United States Constitution limits the jurisdiction of the federal courts to matters that present actual "cases and controversies;" therefore, "an actual controversy must be extant at all stages of review." *Del-Orden v. Bonobos, Inc.,* No. 17 Civ. 2744 (PAE) (S.D.N.Y. Dec. 20, 2017), quoting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis*, 1523 S. Ct. at 1528.

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 Fed. App'x 24, 27 (2d Cir. 2011), citing *Makarova* at 113. "In resolving a motion to dismiss for lack of subject

matter jurisdiction, 'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" *Del-Orden,* citing *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). But "jurisdiction must be shown affirmatively" by the plaintiff "and that showing is not made by drawing from the pleading inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998); *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "[the] court may consider evidence outside the pleadings, such as affidavits and exhibits." *Del-Orden*, citing *Makarova* at 113.

### b.     Motion to Dismiss under Fed. R. Civ. P. 12(b)(2).

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994)). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). The plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks omitted)).

"Once a defendant has raised a jurisdictional defense on a Rule 12(b) motion to dismiss, the plaintiff bears the burden of proving sufficient contacts with the relevant forum to establish jurisdiction over each defendant." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y.

CORE/3504102.0019/159167301.1

2012).  It is well-established that "in deciding a pretrial motion to dismiss for lack of jurisdiction a district court has considerable procedural leeway," and it "may determine the motion on the basis of. . . affidavits alone."  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (citation omitted).

## IV.    ARGUMENT

### a.    The Complaint Must Be Dismissed Because Guglielmo Lacks Standing.

Standing to sue is a doctrine rooted in the traditional understanding of the "case or controversy" requirement as defined in the Constitution.  The doctrine was developed in case law to ensure that federal courts do not exceed their authority as it has been traditionally understood.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Article III, § 2 of the Constitution sets out the "case or controversy clause" as follows:

> The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;--to all cases affecting ambassadors, other public ministers and consuls;-- to all cases of admiralty and maritime jurisdiction;--to controversies to which the United States shall be a party;--to controversies between two or more states;--between a state and citizens of another state;--between citizens of different states;-- between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects.

Standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  *Spokeo*, 136 S. Ct. at 1547.  "In this way, the law of Article III standing. . .  serves to prevent the judicial process from being used to usurp the powers of the political branches and confines the federal courts to a properly judicial role."  *Id.*  The Supreme Court has defined an "irreducible constitutional minimum" of standing consisting of three elements.  The plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  The injury-in-fact requirement requires a plaintiff to allege an injury that is both "concrete and particularized."  *Spokeo,* 136 S. Ct. at 1545 citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 (2000).

The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S. Ct. 596, 107 L.Ed.2d 603 (1990). *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016).  When the case is at the pleading stage, "the plaintiff must 'clearly . . .  allege facts demonstrating' each element." *Id*.

Here, Guglielmo cannot establish the elements necessary to confer standing because he has not alleged that he suffered an injury-in-fact that is both "concrete" and "particularized."  "To establish injury-in-fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 136 S. Ct. at 1548.

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.*  While particularization is necessary to establish injury-in-fact, it is not sufficient alone. An injury-in-fact must also be "concrete." *Id.*  In *Spokeo,* the Supreme Court explained that, "[a] 'concrete' injury must be 'de facto' . . .  that is, it must actually exist."  "Concrete" has been used to convey the usual meaning of the term, such that "concrete" means "real," and not "abstract." *Id.*  The requirement that the injury be "concrete" does not necessarily require that the injury be tangible, however. *Id.* at 1549.  For example, Congress can identify intangible harms that meet Article III requirements. *Id.*  But a plaintiff does not automatically satisfy the injury-in-fact requirement simply whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Id.*  Article III standing requires a concrete injury, even in the context of a statutory violation. *Id.*

Here, Guglielmo fails to articulate any such injury.  Most remarkably, in Guglielmo's First Cause of Action, he sets forth claims that NFM's Website fails to comply with the ADA, but never explains how he suffered any harm, tangible or intangible, as a result of such alleged non-compliance.  *See* Complaint at ¶¶ 48-55.  Indeed, nowhere in the Complaint does Guglielmo identify a particularized, concrete injury beyond the recitation of a procedural violation of the ADA.  Guglielmo fails to explain how he, *personally,* was harmed by the alleged violations of the ADA.  This is precisely the kind of problem addressed by the Supreme Court in *Spokeo*. There, plaintiff Robins allegedly discovered that defendant Spokeo created a profile of him with inaccurate information that allegedly violated the Fair Credit Reporting Act of 1970 (FCRA). *Spokeo*, 136 S. Ct. at 1546.  Yet, in his complaint, Robins argued that Spokeo willfully failed to comply with the FCRA requirements without further allegation of harm.  *Id.*  The District Court for the Central District of California granted a motion to dismiss for lack of subject matter jurisdiction because Robins failed to properly plead an injury-in-fact.  *Id.*  The Ninth Circuit Court of Appeals reversed the Central District, arguing that the violation of a statutory right is usually a sufficient injury-in-fact to confer standing.  *Id.*  The Ninth Circuit held that the violation was specific to Robins and that "Spokeo violated [Robins's] statutory rights, not just the statutory rights of other people."  *Id.*  Nevertheless, the Supreme Court reversed the Ninth Circuit for failing to consider whether Robins had alleged a concrete injury.  Indeed, the Supreme Court observed that even if Spokeo violated the FCRA, that may have resulted in no harm to Robins because, for example, the information disclosed by Spokeo may have been accurate, or it may have been inaccurate and not harmful.  *Id.* at 1550.

As explained above, NFM policy makes it impossible for a new customer residing in New York State, like Guglielmo,  to visit the NFM Website and make *any* purchase.  Douglas

Decl. at ¶¶ 5-10.  As a result, there is no possibility that Guglielmo was denied any access to purchasing any product whatsoever.  In similar circumstances, a sister circuit has applied *Spokeo* to find that a plaintiff lacked standing to make claims regarding alleged inaccessibility of a website under the ADA where the plaintiff could not possibly obtain services from that website. *See Griffin v. Department of Labor Federal Credit Union*, 912 F.3d 649 (4th Cir. 2019).  In *Griffin*, the plaintiff alleged that the Federal Credit Union website failed to comply with the ADA and sought relief thereunder.  *Id.* at 652.  However, the plaintiff was not eligible for membership with the Federal Credit Union and did not work for the Department of Labor.  The plaintiff likewise was not eligible for any benefits conferred by the Department of Labor such as membership with the Federal Credit Union.  *Id.*  Like Guglielmo, the plaintiff in *Griffin* failed to explain any specific harm he experienced.  *Id.* at 653-54.  As such, the Fourth Circuit interpreted the plaintiff's claims broadly as seeking dignitary or informational harm.  *Id.*  However, because a law made it impossible for the plaintiff to interact directly with the Credit Union, the Fourth Circuit found that the plaintiff could not allege more than an "abstract" injury.  *Id.*  Likewise, the Fourth Circuit found that the plaintiff could not allege a particularized injury necessary for standing because he could not identify "any connection between the defendant and himself that transforms the general harms he alleges into particularized ones."  *Id.* at 655.  In summation, the Fourth Circuit analyzed its ruling in light of *Spokeo* as follows:

> We are not at liberty to assail the basic principles of *Spokeo* here. Standing doctrine will doubtless pose complicated questions as it is applied to Internet-based harms in the future, but the case before us today is straightforward and narrow.  Griffin is not a member of the Credit Union, he is not eligible to become a member of the Credit Union, he has no plans to become eligible to be a member of the Credit Union, and no action we take could possibly make him eligible to become a member of the Credit Union.  Under these specific circumstances there can be no injury in fact.

CORE/3504102.0019/159167301.1

*Griffin*, 912 F.3d at 657.   This case strongly parallels *Griffin*.   Guglielmo was not eligible to make purchases from the NFM Website under any circumstances.   Douglas Decl. at ¶¶ 5-10. The complaint fails to allege what Guglielmo intended to purchase or how he suffered any harm whatsoever.   Instead, he alleges only the following:

> On multiple occasions, the last occurring in December of 2019, Plaintiff visited Defendant's website, www.nfm.com, to make a purchase.   Despite his efforts, however, Plaintiff was denied a shopping experience similar to that of a sighted individual due to the website's lack of a variety of features and accommodations, which effectively barred Plaintiff from being able to determine what specific products were offered for sale.

Complaint at ¶ 24.

Despite these allegations, it is clear that Guglielmo would have been unable to "purchase" a product even if he were a sighted individual because he resides in New York state. Indeed, like the plaintiff in *Griffin*, Guglielmo is not currently eligible to purchase products from the NFM Website nor does the Complaint allege any plans that would allow him to become eligible.

At most, Guglielmo alleges a procedural violation of the ADA by NFM through the NFM Website, or a dignitary or emotional harm.   The Complaint fails to specify anything that extends beyond the allegation of a procedural violation of the ADA and related allegations of deficiencies in the NFM Website.[2]   But such harms cannot rise to the level necessary to confer standing.   *Griffin*, 912 F.3d at 653-57.    For these reasons, the Court must grant the motion to dismiss the First Cause of Action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).   The Complaint also includes claims under the New York City Human Rights Law and

---

[2] NFM notes that Guglielmo is, in fact, a serial plaintiff in matters such as this one.   As noted above, just since October 31, 2019, Guglielmo has filed at least 115 actions in this Court raising allegations similar to those of this Complaint.   Although Guglielmo still may have cognizable causes of action in these cases, the number of suits raises the legitimate question of what concrete and particularized harms Guglielmo has experienced in those suits.

declaratory relief under federal and New York City law.  Complaint at ¶¶ 56-71.  This Court has found that claims under the New York City Human Rights Law are governed by the same standing requirements as those under the ADA.  *See Mendez v. Apple Inc.,* 18-cv-7550-LAP, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019).  As such, should this Court find dismissal of the First Cause of Action is appropriate, NFM submits that the remaining claims should be dismissed per this Court's precedent.  *Id.*

> **b.**     **Guglielmo's Claims Are Moot or Will Be Moot Because NFM Has Remediated the Majority of the Alleged ADA Violations and Will Remediate the Remainder by the Status Conference.**

A corollary to the "case or controversy" requirement addressed above is that "an actual controversy must be extant at *all stages of review*, *not merely at the time the complaint is filed.*" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013).  Absent an actual case or controversy, a claim is properly dismissed for a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because the district court would necessarily lack the statutory or constitutional power to adjudicate it.  *Makarova v. U.S.,* 201 F.3d 110, 113 (2d. Cir. 2000).  Thus, factual changes made by a defendant after litigation commences can moot a case.

"The mootness doctrine is derived from the constitutional requirement that federal courts may only decide live cases or controversies." *Yandow v. Kronau*, 474 Fed. App'x. 797, 799 (2d Cir. 2012) (quoting *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998)).  "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Irish Lesbian & Gay Org*., 143 F.3d at 647.

There is an exception to application of mootness.  Notably, "factual changes made by a defendant after litigation has commenced cannot render a case moot unless it is absolutely clear the defendant cannot resume the allegedly offending conduct." *Clear Channel Outdoor, Inc. v.*

*City of New York*, 594 F.3d 94, 110 (2d Cir. 2010).  Rather, a narrow exception exists for cases that are "capable of repetition, yet evading review."  The exception exists where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again."  *Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001).

Here, NFM has invested significant resources in understanding and addressing the accessibility issues alleged by the Complaint.  Douglas Decl. at ¶¶ 14-18.  NFM studied Guglielmo's Complaint and the four areas of concern he alleged.  *Id.* at ¶ 17.  Based on that review, NFM identified very few possible problems in the NFM Website.  *Id*.  For example, the audit identified only five broken links, accounting for an error rate of approximately .00961%.  *Id.*  The audit also determined that over 99% of the web pages had label and title elements, and more than 95% of the images had alt tags.  *Id.*  Despite the very low rate of error, the NFM team resolved each issue.  *Id.*  NFM is unaware of any further accessibility issues in the NFM Website like those alleged by Guglielmo.  *Id.*  Because all allegations identified by Guglielmo have been addressed, there is no "live case or controversy," and this case should be dismissed for lack of subject matter jurisdiction.  *Makarova,* 201 F.3d 110, 113 (2d. Cir. 2000).

Further, given NFM's past and future commitments to accessibility, the claims in this case are not "capable of repetition, yet evading review."  *Van Wie*, 267 F.3d 109, 114 (2d Cir. 2001).  NFM has demonstrated long-held commitment to making the NFM Website accessible.  Douglas Decl. at ¶¶ 11-13.  NFM has worked actively for several years to provide reasonable accessibility to visitors.  *Id.*  In the next few months, NFM plans to have a complete relaunch of the NFM Website.  *Id.*  In conjunction with the relaunch, NFM is retaining a third-party consultant who will audit the NFM Website and verify that it satisfies the most current

13

appropriate version of the WCAG. *Id.* at ¶ 13. These considerable efforts should allay any concern about NFM's commitment to working on accessibility issues, and clarify that there is no reasonable expectation that Guglielmo will be able to raise his claim again. *Van Wie,* 267 F.3d at 114.

In summation, NFM has (a) addressed every possible issue related to the allegations made by Guglielmo, (b) engaged in a years-long commitment to the accessibility of the NFM Website, and (c) committed to an imminent redesign of the NFM Website when a third party will verify compliance with the most current applicable version of the WCAG. As such, the claims raised by Guglielmo are mooted. When the claims are mooted, an actual controversy will not exist, and the case must be dismissed. *Genesis Healthcare Corp.,* 133 S. Ct. at 1528.

In fact, this very Court recently granted a motion to dismiss a similar complaint based on a similar theory of mootness. *See Diaz v. Kroger Co.*, 18-cv-7953, 2019 WL 2357531, (S.D.N.Y. Jun. 4, 2019). In *Diaz*, this Court granted a motion to dismiss for lack of subject matter jurisdiction[3] because defendant Kroger Co. had remediated the alleged barriers plaintiff Diaz claimed impaired his use and enjoyment of Kroger's website. *Diaz*, 2019 WL 2357531 at *5. The *Diaz* court explained its reasoning as follows:

> To review, Plaintiff identified several barriers to his use and enjoyment of the Website. Defendant removed those barriers, brought the Website into compliance with Plaintiff's preferred WCAG 2.0 standard, and commits to monitoring technological developments in the future to ensure that visually-impaired individuals have equal access to the Website. On this record, Defendant has met the stringent showing required by the Supreme Court's mootness precedents. The Court accordingly lacks subject matter jurisdiction to consider Plaintiff's claims.

---

[3] This Court also granted the motion to dismiss for lack of personal jurisdiction. *Diaz*, 2019 WL 2357531 at *7.

14

*Id.*  The present case is strikingly similar to *Diaz*.  The Douglas Declaration establishes that NFM (1) is deeply committed to accessibility in the NFM Website;[4] (2) has resolved the issues it could identify that relate to Guglielmo's allegations; and (3) has made further commitments to ensuring the accessibility of the NFM Website and compliance with the WCAG.  Because an actual case or controversy must exist at *every stage of the litigation*, the Court lacks subject matter jurisdiction to proceed on these claims.  *Genesis Healthcare Corp.,* 133 S. Ct. at 1528.  The Court must grant the motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Thus, to the degree that the Complaint is not otherwise dismissed, it is moot, and the Court should dismiss this case for lack of subject matter jurisdiction.  *See F.O. v. New York City Dept. of Educ.*, 899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012).[5]

### c.    The Complaint Should Be Dismissed for Lack of Personal Jurisdiction.

In addition to the lack of subject matter jurisdiction explained above, this Court lacks personal jurisdiction over NFM and should be dismissed under Fed. R. Civ. P. 12(b)(2).  To begin, NFM has no physical presence or operations in the District or in the State of New York. Douglas Decl. at ¶ 4.  NFM's headquarters are in Omaha, Nebraska, approximately 1,240 miles from the District.  *Id.*  NFM has explicit policies that would prevent Guglielmo or a similar customer from successfully making such a purchase if he or she is residing in New York.  *Id.* at ¶¶ 4-10.

---

[4] Consideration of the Douglas Declaration is appropriate in determining a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  *Del-Orden*, citing *Makarova*, 201 F.3d, at 113.

[5] If the Court grants this Motion, NFM notes that it will seek attorneys' fees from Guglielmo pursuant to 42 U.S.C. § 12205, and Guglielmo electing to persist with mooted claims supports an award of fees.  If Guglielmo proceeds with claims that are mooted, such conduct could amount to litigating frivolous, unreasonable, and groundless claims. *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1381 (S.D. Fla. 2011).  Accordingly, NFM submits that it is entitled to recover attorneys' fees from Guglielmo because of such conduct.  *Id.*

CORE/3504102.0019/159167301.1

Accordingly, the Complaint should be dismissed for lack of personal jurisdiction as set forth below.

To determine whether it may exercise personal jurisdiction over a non-domiciliary, a district court engages in a two-part analysis.  First, the court determines whether jurisdiction exists under the law of the forum state.  New York law recognizes two types of personal jurisdiction over a non-domiciliary:  general personal jurisdiction and long-arm personal jurisdiction.  *Big Apple Pyrotechnics & Multimedia, Inc. v. Sparktacular. Inc.,* No. 05 Civ. 9994(KMW), 2007 WL 747807, at *2 (S.D.N.Y. Mar. 9, 2007).  The "traditional bases" for general personal jurisdiction include, for example, "physical presence, consent, domicile, or business activity."  *Id.*  Long-arm jurisdiction exists where the non-domiciliary engages in one of the activities enumerated in the long-arm statute, such as transacting business within New York, and the cause of action arises out of that activity.  *See* C.P.L.R. § 302(a); *see also Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 246 (2d Cir. 2007); *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006).  A defendant "transacts business" in New York for purposes of the long-arm statute when he "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law."  *Family Internet, Inc. v. Cybernex, Inc.,* No. 98 Civ. 0637(RWS), 1999 WL 796177, at *5 (S.D.N.Y. Oct. 6, 1999) (internal quotations omitted); *see also, Best Van Lines,* 490 F.3d at 246.

Second, even if state law allows for the exercise of personal jurisdiction over a non-domiciliary, the court must also determine whether the exercise of jurisdiction under state law would satisfy federal due process requirements.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999); *Big Apple Pyrotechnics & Multimedia Inc.,* 2007 WL 747807, at *2.  "Due process requires that a non-resident defendant have 'certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and

16

substantial justice.'"  *Marsalis v. Schachner,* No. 01 Civ. 10774(DC), 2002 WL 1268006, at *4 (S.D.N.Y. June 6, 2002) (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 145, 152 (2d Cir. 2001)).  Application of the two-part test clearly establishes that New York cannot exercise personal jurisdiction over NFM.

> **1.    Exercise of Jurisdiction over NFM Would Not Satisfy Federal Due Process Requirements.**

Even if NFM could be subject to personal jurisdiction under New York's long-arm statute C.P.L.R. § 302(a), an exercise of jurisdiction over NFM would not be consistent with the Due Process Clause.  It is undisputed that NFM is not resident in New York.  Douglas Decl. at 4; Complaint at ¶ 13.  The clause requires "minimum contacts" between nonresident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 100 S. Ct. 559, 62 L.Ed.2d 490 (1980) (internal quotations omitted).  Sufficient contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there."  *Id.* at 297, 100 S. Ct. 559.  The defendant must have "purposefully availed itself of the privilege of conducting activities within the forum [s]tate," thus invoking the benefits and protections of the state's laws.  *Id.; see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985).

NFM is a Nebraska corporation headquartered in Omaha, Nebraska, with no office or retail presence in New York.  Guglielmo has not alleged, nor could he allege, that NFM has taken steps to purposefully avail itself of the privilege of conducting activities within New York.  Rather, the only business that Guglielmo alleges to have occurred in the District is apparently through allowing the NFM Website to be accessed by New Yorkers.  Complaint at ¶ 9.  This is insufficient to support personal jurisdiction.  "It stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature,

that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred or was actively sought." *Freeplay Music, Inc. v. Cox Radio, Inc.,* No. 04 Civ. 5238(GEL), 2005 WL 1500896, *6-7 (S.D.N.Y. June 23, 2005). Indeed, here, NFM does not allow a new visitor such as Guglielmo to make purchases via the NFM Website whatsoever.  Douglas Decl. at ¶¶ 5-8.  A new visitor residing in New York cannot even make a purchase for pickup at an NFM store.  *Id.* at ¶ 7.  If Guglielmo attempted to purchase a product as a new customer or to obtain an NFM Card while providing a New York state zip code, the NFM Website would not permit him to do so.  In this manner, this case is once again like *Diaz.* There, the court confirmed that the defendant's website would not allow delivery to any New York zip code.  *Diaz,* 2019 WL 2357531, at *7.  Thus, it was determined that the defendant, "does not sell, through the Website, goods or services to New York residents."  *Id.*  The defendant's motion to dismiss was granted, and the court concluded, "the fact that Plaintiff can access the Website in the Bronx, standing alone, does not amount to Defendant's transacting business in the state for purposes of New York's long-arm statute."  *Id.*  The circumstances here are the same.  As a New York resident, Guglielmo never had the ability to order a product from the NFM Website through delivery nor could he obtain an NFM Card through the NFM Website.  As such, the NFM Website does not amount to transacting businesses in New York for the purposes of New York's long-arm statute. NFM respectfully submits that the Complaint should be dismissed accordingly.

## 2. New York Has No General Jurisdiction over NFM.

Minimum contacts necessary to satisfy due process form the basis for the exercise of either "general" or "specific" jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984).  A court may assert general personal jurisdiction over a foreign corporation to hear any and all claims against it when the foreign corporation's affiliation with the forum state is so continuous and systematic as to

CORE/3504102.0019/159167301.1

render the foreign corporation essentially "at home" in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 187 L.Ed.2d 624 (2014). A corporation is considered "at home" in the state in which it is incorporated or where it has its principal place of business. *Id*. at 760.

Once again, it is undisputed that NFM is not "at home" in New York. Rather, Guglielmo admits that NFM is a Nebraska corporation. Complaint at ¶ 13. NFM physical headquarters are in Omaha, Nebraska, and it is undisputed that NFM has no physical presence in the District. Douglas Decl. at ¶ 4. NFM likewise does not own or operate any stores or businesses in the District. *Id.* Guglielmo has not alleged, nor can he allege, that New York has general jurisdiction over NFM. Therefore, New York has no general jurisdiction over NFM.

### 3.   New York Cannot Assert Specific Jurisdiction over NFM.

Determination as to whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine*, Inc., 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L.Ed.2d 683 (1977)). For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial connection* with the forum state. *Walden v. Fiore*, 134 S. Ct. 1115, 1121-23, 188 L.Ed.2d 12 (2014). In *Walden,* the Supreme Court explained that two factors determine whether there is a substantial connection: (1) whether the contacts were created by the defendant himself, and (2) whether the contacts are with the state itself rather than persons residing there. *Id.*

A defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties. However, a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. *Walden*, 134 S. Ct. at 1121-23. Due process requires that a defendant be haled into court in a forum state based on

his own affiliation with the state, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the state. *Burger King*, 471 U.S. at 475.

Nothing in the Complaint even suggests the exercise of specific jurisdiction over NFM would be appropriate. As indicated above, NFM is neither incorporated in New York nor does it have its principal place of business here. Complaint at ¶ 13; Douglas Decl. at ¶ 4. NFM does not operate any stores in New York. Indeed, the only specific allegation regarding NFM's contacts with New York is through Guglielmo, a New York resident, and his access of the NFM Website. Complaint at ¶ 9 and ¶¶ 21-40. But the Supreme Court specifically explained in *Walden* that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S. Ct. at 1122.[6]

Beyond this, Guglielmo alleges nothing specific enough to exercise specific jurisdiction over NFM as it does not demonstrate a relationship that NFM created with New York as required by *Burger King*. Regarding Guglielmo's use of the NFM Website, there is no allegation Kroger targeted Guglielmo in New York or solicited him to access the NFM Website. Similarly, there is no allegation Guglielmo ordered any products from NFM via the NFM Website or that NFM delivered any products to Guglielmo in New York. In fact, NFM has established that such orders could never have been completed by Guglielmo regardless of whether he was sighted. Douglas Decl. at ¶¶ 5-10. Indeed, Guglielmo fails to specify *any* business that occurred between NFM and any resident of the District other than himself.

For the foregoing reasons, New York cannot assert personal jurisdiction over NFM, and the case must be dismissed under Fed. R. Civ. P. 12(b)(2).

---

[6] In the Pre-Motion Conference on March 18, 2019, the Court posed a hypothetical regarding whether there could be jurisdiction over NFM if a New York resident made a purchase of NFM products at an NFM store and moved it to New York. NFM submits the answer is no. The only connection between New York and NFM would be the plaintiff's residence. The Supreme Court has rejected this as a basis for jurisdiction. *Walden*, 134 S. Ct. at 1122.

####    d.    The State Law and New York City Claims Must Be Dismissed.

As explained above, the federal claims based on alleged violations of the ADA must be dismissed because of lack of subject matter jurisdiction and lack of personal jurisdiction.  The Complaint also sets forth additional Causes of Action under the New York City Human Rights Law and for declaratory relief under the ADA and the New York City Human Rights Law. Complaint at ¶¶ 56-71.  The Complaint asserts that the Court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367.  Complaint at ¶ 7.  If the Court dismisses the ADA claim, these claims should be dismissed as the Court would lack jurisdiction over them.

## V.    CONCLUSION

The Complaint is fatally flawed in multiple respects, and dismissal is warranted. Alleging merely procedural violations of the ADA statute with no concrete injury, the Complaint fails to allege a concrete injury-in-fact to create a necessary case or controversy.  Moreover, Guglielmo lacked standing because he never had the ability to make a purchase as a new NFM customer who is New York resident, regardless of his visual impairment.  The Complaint is also mooted by NFM's actions to completely address the alleged violations of the ADA in the NFM Website.  Further, the Court lacks personal jurisdiction over NFM.  For each and every of the foregoing reasons, the Complaint should be dismissed in its entirety.  After the Complaint is dismissed, NFM reserves its rights to seek fees under 42 U.S.C. § 12205.

Date: May 1, 2020                                    Respectfully submitted,

                                                     STINSON, LLP

                                                     */s/ Samir R. Mehta*
                                                     Samir R. Mehta (*pro hac vice*)
                                                     7700 Forsyth Blvd., Suite 1100
                                                     St. Louis, Missouri 63105
                                                     (314) 259.4517 (t)
                                                     (415) 786.0272 (c)
                                                     samir.mehta@stinson.com

21

Kieran M. Corcoran (KC4935)
1325 Avenue of the Americas
27th Floor
New York, New York 10019
(212) 763.8491 (t)
(212) 763.8304 (f)
kieran.corcoran@stinson.com

*Attorneys for Defendant Nebraska Furniture Mart, Inc.*

22