UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH GUGLIELMO, *on behalf of himself and all others similarly situated*,

Plaintiff,

-v.-

NEBRASKA FURNITURE MART, INC.

Defendant.

---

19 Civ. 11197 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Joseph Guglielmo brought this action against Defendant Nebraska Furniture Mart, Inc., alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 (the "ADA"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 (the "NYCHRL"). Plaintiff claims that a website operated by Defendant denies equal access to blind and visually-impaired customers. Defendant moves to dismiss Plaintiff's Complaint under two different subparts of Federal Rule of Civil Procedure 12(b): Rule 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(2), for lack of personal jurisdiction. In relevant part, Defendant argues that Plaintiff lacks standing to bring an ADA claim; that Plaintiff's claims have been or will be mooted by Defendant's remediation; and that New York has neither general jurisdiction nor specific jurisdiction over Defendant. For the reasons discussed herein, Defendant's motion to dismiss is granted.

**BACKGROUND**[1]

## A.    Factual Background

Plaintiff is a blind and visually-impaired individual who resides in Suffolk County, New York.  (Compl. ¶¶ 11-12).  Defendant is a furniture and appliances retailer incorporated and with a principal place of business in Nebraska.  (*Id.* at ¶ 21; Douglas Decl. ¶¶ 3-4).  In addition to maintaining several physical stores, none of which is located in New York State (Douglas Decl. ¶ 4), Defendant operates the website www.nfm.com (the "Website"), through which it offers products and services for online sale and delivery to consumers.  (Compl. ¶¶ 21-22).  The Website provides information about the products available for sale, including descriptions and prices, and allows users to browse for items.  (*Id.* at ¶ 22).

On multiple occasions before filing his Complaint, the most recent of which was in December 2019, Plaintiff visited the Website to make a purchase. (Compl. ¶ 24).  According to Plaintiff, he was unable to determine which of

---

[1]    The facts in this Opinion are drawn from Plaintiff's Complaint ("Compl." (Dkt. #1)), the well-pleaded facts of which are taken as true for the purposes of this motion.  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (stating that when reviewing a complaint for failure to state a claim, the court will "assume all well-pleaded factual allegations to be true" (citation and internal quotation marks omitted)).  The Court may also consider other relevant submissions from the parties in resolving the pending motion to dismiss for lack of personal or subject matter jurisdiction.  *See Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) ("[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading."); *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 338 n.1 (S.D.N.Y. 2015) ("Because a motion to dismiss for lack of personal jurisdiction requires the resolution of factual issues outside the pleadings, the Court considers other relevant submissions from the parties at this stage." (citation and alteration omitted)).

For ease of reference, the Court refers to Defendant's Motion to Dismiss as "Def. Br." (Dkt. #25), and to the Declaration of Jeffrey Douglas as "Douglas Declaration" or "Douglas Decl." (Dkt. #25-1).

Defendant's products were offered for sale due to the Website's lack of certain features and accommodations that aid people with visual impairments in their navigation of websites.  (*Id.*).  Specifically, many features on the Website lacked "alt. text," the code embedded beneath a graphical image that allows Plaintiff to differentiate among the products listed on a screen.  (*Id.* at ¶ 25).  Plaintiff found these issues to be particularly acute when attempting, unsuccessfully, to make a purchase.  (*Id.*).  Certain features on the Website also failed to include elements or attributes that enable blind and visually-impaired individuals to identify the purpose of a webpage or to determine when content requires user input.  (*Id.* at ¶ 26).  Further, many webpages on the Website contained the same title elements, which make it difficult for the visually impaired to distinguish among webpages.  (*Id.* at ¶ 27).  Lastly, the Website contained a number of "broken" links that hyperlinked to non-existent or empty webpages, and had the effect of preventing Plaintiff from returning to his original search.  (*Id.* at ¶ 28).  Because of these access barriers, Plaintiff argues that he was effectively denied the ability to use and enjoy Defendant's website in the same way that sighted individuals do.  (*Id.* at ¶ 29).

## B.    Procedural Background

Plaintiff initiated this action with the filing of a complaint on December 6, 2019.  (Dkt. #1).  On January 31, 2020, Defendant applied for leave to file a motion to dismiss.  (Dkt. #14).  Plaintiff submitted a response on February 6, 2020, opposing Defendant's letter motion.  (Dkt. #16).  In a pre-motion conference on March 18, 2020, the Court set a briefing schedule on

Defendant's motion to dismiss, pursuant to which Defendant's opening papers were due by May 1, 2020, Plaintiff's opposition papers were due by June 8, 2020, and Defendant's reply was due by June 22, 2020. (Minute Entry for March 18, 2020). Defendant filed its motion to dismiss and supporting papers on May 1, 2020. (Dkt. #24, 25). On June 11, 2020, Defendant filed an answer to the Complaint. (Dkt. #27).

On June 23, 2020, the Court received a joint letter from the parties indicating that on June 8, 2020, the date his opposition papers were due, Plaintiff had contacted Defendant to discuss a potential joint stipulation of dismissal. (Dkt. #28). In the letter, Defendant stated that due to "the significant effort" incurred in preparing its motion to dismiss, it was seeking a decision on the pending motion rather than a voluntary dismissal. (*Id.* at 2). Defendant further noted that given Plaintiff's failure to file an opposition to the motion to dismiss by the Court's deadline, Defendant had not filed any reply papers. (*Id.* at 1). In the same letter, Plaintiff argued that Defendant's decision to file an answer served as an effective dismissal of its motion. (*Id.* at 2).

Following a conference before the Court on June 25, 2020, Defendant submitted a letter informing the Court that it had refused a subsequent stipulation of dismissal proposed by the Plaintiff, as it determined that the stipulation failed to provide the relief sought in Defendant's motion to dismiss. (Dkt. #30). The parties thereafter submitted briefing on the question of whether Defendant's filing of an answer had rendered its motion to dismiss moot. (Dkt. #32, 33). On August 10, 2020, the Court determined that

Defendant's motion to dismiss had not been mooted by its subsequent Answer. (Dkt. #34). Further, the Court found that Defendant's pending motion to dismiss was unopposed, as Plaintiff had chosen not to file any opposing papers on the date on which his opposition was due. (*Id.*). Accordingly, the Court considers Defendant's motion to dismiss to be fully briefed, unopposed, and ripe for decision.

## DISCUSSION

**A.    The Court Grants Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

### 1.    Applicable Law

#### a.    Motions to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to assert lack of subject matter jurisdiction as a defense by motion. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions challenging subject matter jurisdiction: facial motions and fact-based motions. *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Carter*, 822 F.3d

at 56.  When considering a facial challenge, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue."  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  And to make that determination, a court must accept the complaint's allegations as true "and draw[ ] all reasonable inferences in favor of the plaintiff."  *Id.* at 57 (citation omitted).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [complaint and its exhibits]."  *Carter*, 822 F.3d at 57.  "In opposition to such a motion, plaintiffs must come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing."  *Katz*, 872 F.3d at 119 (citation and internal quotation marks omitted).  If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a district court will need to make findings of fact in aid of its decision as to subject matter jurisdiction.  *Carter*, 822 F.3d at 57.

### b.    Standing in ADA Actions

Article III of the Constitution limits federal courts' jurisdiction to "cases" and "controversies."  U.S. Const., Art. III, § 2.  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are

appropriately resolved through the judicial process.'" *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 157 (2014) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  The Supreme Court has "established that the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc.* v. *Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan*, 504 U.S. at 560).  "The plaintiff must have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision." *Id.*  Where, as here, a plaintiff seeks injunctive relief, he "must also prove that the identified injury in fact presents a 'real and immediate threat of future injury,' often termed a 'likelihood of future harm.'" *Bernstein* v. *City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order) (quoting *Shain* v. *Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

"In reviewing standing under the ADA, 'a broad view of constitutional standing' is appropriate because 'private enforcement suits are the primary method of obtaining compliance with the Act.'" *Feltzin* v. *Clocktower Plaza Props., Ltd.*, No. 16 Civ. 4329 (DRH) (AYS), 2018 WL 1221153, at *3 (E.D.N.Y. Mar. 8, 2018) (quoting *Rosa* v. *600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016)).  In actions brought under the ADA, the Second Circuit has "found standing (and therefore an injury in fact)," *Kreisler* v. *Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) (per curiam), where a plaintiff "[i] alleges past injury under the ADA, [ii] shows that it is reasonable to infer from his or her complaint that the discriminatory treatment will continue,

and [iii] shows that it is reasonable to infer that he or she 'intend[s] to return to [the public accommodation].'" *Harty* v. *Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 154-55 (2d Cir. 2013) (summary order) (alterations in *Greenwich Hosp. Grp., LLC*) (quoting *Kreisler*, 731 F.3d at 187-88).

### c.    Establishing Mootness Under Fed. R. Civ. P. 12(b)(1)

A request for injunctive relief, such as that sought by Plaintiff under the ADA, will only be deemed moot by a defendant's voluntary compliance with the statute if the defendant meets the "formidable burden" of demonstrating that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *see also Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 91-92 (2013); *Clear Channel Outdoor, Inc.* v. *City of New York*, 594 F.3d 94, 110 (2d Cir. 2010); *see also Campbell-Ewald Co.* v. *Gomez*, 577 U.S. 153, 161 (2016) (observing that mootness occurs "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (citations and internal quotation marks omitted)). More specifically, "[t]he voluntary cessation of allegedly illegal activity may render a case moot 'if the defendant can demonstrate that [i] there is no reasonable expectation that the alleged violation will recur and [ii] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Clear Channel*, 594 F.3d at 110 (quoting *Campbell* v. *Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

2.    **Discussion**

Defendant proffers two arguments for the Court's lack of subject matter jurisdiction over this case: (i) Plaintiff failed to establish the elements necessary to confer standing under the ADA, and (ii) the claims alleged in the Complaint either have or will become moot because of modifications to the Website to address the accessibility issues raised by Plaintiff. (Def. Br. 7-15). After reviewing the materials it may properly consider in this context, the Court agrees with Defendants on both counts.

a.    **Plaintiff Lacks Standing**

As stated above, Plaintiff must sufficiently allege the following three factors necessary to confer standing under the ADA: (i) that he has been injured under the ADA; (ii) that it is reasonable to infer from his Complaint that the discriminatory treatment will continue; and (iii) that it is reasonable to infer that he intends to return to the Website. *See Greenwich Hosp. Grp., LLC*, 536 F. App'x at 154-55. Defendant argues that Plaintiff has not alleged an injury-in-fact that is both "concrete" and "particularized," but rather, at most, has alleged a procedural violation of the ADA. (Def. Br. 8, 11).

The Court agrees with Defendant that the allegations pleaded in the Complaint do not satisfy the injury-in-fact requirement of Article III. Significantly, Plaintiff's allegations lack "all the requisite specificity" necessary to establish an injury in fact. *Mendez* v. *Apple Inc.*, No. 18 Civ. 7550 (LAP), 2019 WL 2611168, at *2 (S.D.N.Y. Mar. 28, 2019). Such vague allegations are

insufficient to establish a concrete and particularized injury for standing purposes.

To review, Plaintiff alleges that he visited the Website "on multiple occasions, the last occurring in December of 2019," and found certain access barriers across "many features" and "many pages" of the Website.  (Compl. ¶¶ 24-28).  He contends that these access barriers denied him the ability to use and enjoy the Website "the same way sighted individuals do."  (*Id.* at ¶ 29).  But while Plaintiff identifies certain barriers, he does not allege where exactly on the Website he encountered these barriers, aside from noting that the lack of embedded "alt. text" code was particularly an issue on an unspecified section of the Website where he unsuccessfully attempted to make a purchase.  (*Id.* at ¶ 25).  Further, Plaintiff does not identify the goods that he intended to purchase on any of his visits to the Website, nor does he specify the dates of any visits.  Courts in this Circuit have required far more from plaintiffs bringing ADA claims.  *Compare Kreisler*, 731 F.3d at 186 (accepting allegations that plaintiff passed by a diner three to four times a week, but that there was "a step that [was] seven or eight inches high" that prevented his access), *and Camacho* v. *Vanderbilt Univ.*, No. 18 Civ. 10694 (KPF), 2019 WL 6528974 at *9 (S.D.N.Y. Dec. 4, 2019) (finding plaintiff's allegations sufficient where he stated, among other things, that he was "unable to utilize the Website's net price calculator because that page was ... incompatible with his screen-reading software"), *with Mendez*, 2019 WL 2611168, at *2 ("Plaintiff does not give a date that she tried to access the physical store or what good or service she was

prevented from purchasing.  She does not identify sections of the website she tried to access but could not[, nor] which [barriers] prevented her from accessing the store.").

Defendant also argues that Plaintiff fails to articulate an injury under the ADA because Plaintiff was "not eligible" to make purchases from the Website — not due to his handicap, but due to his New York domicile.  (Def. Br. 9-11).  In support, Defendant has submitted a declaration from its Director of E-Commerce attesting that, among other things, Defendant's delivery policies make it "impossible for a new customer residing in New York State, like [Plaintiff]" to make a purchase on the Website.  (*See id.* at 9; Douglas Decl. ¶¶ 5-8).  As noted above, this Court can properly consider this evidence on a Rule 12(b)(1) motion.  *See Carter*, 822 F.3d at 57.

As legal support, Defendant cites a decision from the Fourth Circuit Court of Appeals holding that the plaintiff there had not alleged more than an "abstract" injury, where plaintiff alleged certain deficiencies in the Federal Credit Union website, but was forbidden by law from receiving products or services from the credit union.  (Def. Br. 10-11 (citing *Griffin* v. *Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 652-654 (4th Cir. 2019))).  Another district court in this Circuit has observed that *Griffin* and similar cases are "limited to narrow situations where a plaintiff is barred by law from making use of defendant's services," though it ultimately found, consistent with *Griffin*, that "to allege an injury-in-fact for standing purposes, a plaintiff challenging a website's ADA violations must demonstrate that she had a purpose for using

11

the website that the complained-of ADA violations frustrated." *Laufer* v. *Laxmi & Sons, LLC*, No. 19 Civ. 1501 (BKS) (ML), 2020 WL 6940734, at *14, 18 (N.D.N.Y. Nov. 19, 2020) (citation and internal quotation marks omitted). Given the various insufficiencies in Plaintiff's allegations detailed in this Opinion, this Court need not determine whether Defendant's delivery policies are a determinative factor in the standing analysis. However, they will prove significant when the Court turns to its discussion of personal jurisdiction.

Plaintiff has separately failed to allege the third factor necessary to establish standing in an ADA action: an intent to return to the Website in the near future. *See Greenwich Hosp. Grp., LLC*, 536 F. App'x at 155. Intent to return is a "highly fact-sensitive inquiry." *Bernstein*, 621 F. App'x at 59 (citing *Kreisler*, 731 F.3d at 187-88; *Camarillo* v. *Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) (per curiam)). For example, in *Camacho* v. *Vanderbilt University*, the plaintiff alleged that, after attending a college fair, he had visited the defendant's website to learn more about the school and whether it would meet his needs; perhaps more important to the standing inquiry, the plaintiff alleged that if the website were remediated, he would "immediately revisit it" to determine if the defendant's school met his needs and, if so, he would "visit its campus in the very near future and apply for admission." 2019 WL 6528974, at *10. This Court found that these allegations were sufficient because Camacho had established that he: "(i) tried to visit the Website on multiple occasions; (ii) has a stated motivation for returning to visit the Website in the

future; and (iii) may easily return to the Website should it be made accessible." *Id.*

Here, by contrast, Plaintiff alleges only that he is deterred "on a regular basis" from equal access to the Website, and that if the Website were made equally accessible, he could navigate it for the purpose of making a purchase. (Compl. ¶¶ 31-32).  Based on these sparse allegations, and given the unrebutted evidence that Defendant has submitted to demonstrate that Plaintiff would be unable to place an order on their Website for delivery to New York (Douglas Decl. ¶¶ 5-8), the Court doubts that Plaintiff would return to the Website to make a purchase were it readily accessible.  *See Greenwich Hosp. Grp., LLC*, 536 F. App'x at 155 (finding that plaintiff failed to demonstrate a basis for inferring that he would return to defendant's hotel in Stamford, Connecticut where: (i) he did not live near Stamford; (ii) in prior trips to visit family in a nearby city he had only stayed in Stamford once; and (iii) he did not provide any evidence of concrete plans to stay there in the future); *Harty* v. *W. Point Realty, Inc.,* No. 19 Civ. 8800 (VB), 2020 WL 4570595, at *4 (S.D.N.Y. Aug. 7, 2020) (finding that plaintiff's "conclusory" claims that he might return to the defendant hotel's websites to book lodging were insufficient to allow the reasonable inference that plaintiff intended to return to the websites to book a room or utilize defendant's service), *appeal docketed*, No. 20-2672 (2d Cir. Aug. 11, 2020).  The Complaint thus offers only vague and conclusory allegations of intent to return, and fails to establish a likelihood of return.  Because Plaintiff has not pleaded injury in fact with sufficient clarity, and because he has not

alleged any future concrete plan to visit the Website, the Court agrees with Defendant that Plaintiff lacks standing to bring a claim under the ADA.

### b.    Plaintiff's Claims Are Moot

Even assuming that Plaintiff's allegations were sufficient to establish standing under the ADA, his Complaint would still be dismissed on mootness grounds.  As stated above, a case will be rendered moot only where a defendant meets the "formidable burden" of demonstrating that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190.  Defendant here argues that Plaintiff's allegations either are or will become moot due to its past and future commitments to making the Website accessible.  (Def. Br. 12-15).

When faced with a similar mootness argument in a prior case, this Court observed that several sister courts in this District had found that defendants failed to establish mootness either where plaintiffs identified continuing access barriers, or where defendants failed to affirmatively demonstrate ADA compliance.  *See Diaz* v. *Kroger Co.*, No. 18 Civ. 7953 (KPF), 2019 WL 2357531, at *3 (S.D.N.Y. June 4, 2019) (collecting cases).  Here, the evidence offered in Defendant's attestation differs in several key respects from the evidence deemed insufficient in the aforementioned cases, and those differences permit the Court to find that Plaintiff's claims are moot.

The Douglas Declaration attests that: (i) prior to the instant litigation, Defendant had invested time and resources in improving the Website's accessibility; (ii) Defendant has since remedied each of the ADA violations

14

alleged by Plaintiff; and (iii) going forward, Defendant intends to commence a significant redesign of the Website, of which accessibility will be a "central aspect." (Douglas Decl. ¶¶ 11-13). Much like evidence that has previously been found sufficient by this Court, Defendant's attestation offers significantly more than some "conclusory assertion" of the Website's ADA compliance. *See Diaz*, 2019 WL 2357531, at *3 (finding that the defendant's affidavit "address[ed] the deficiencies that courts have identified in defense showings made in support of mootness arguments"). Specifically, Mr. Douglas: (i) details the audit process that Defendant undertook to identify issues relating to Plaintiff's allegations; (ii) provides quantified examples of the audit's findings; (iii) observes that "very few" instances of the access barriers alleged by Plaintiff were actually identified; and (iv) attests that at his direction, Defendant's employees resolved each of the identified issues. (Douglas Decl. ¶¶ 16-18). And while other courts in this District have found that the fact that a defendant "may be in the process of updating the accessibility of its website" to be insufficient to demonstrate mootness, *Markett* v. *Five Guys Enterprises LLC,* No. 17 Civ. 788 (KBF), 2017 WL 5054568, at *3 (S.D.N.Y. July 21, 2017), the Douglas Declaration's summary of Defendant's achievements *to date* does meet "the stringent showing required by the Supreme Court's mootness precedents," *Diaz*, 2019 WL 2357531, at *5.[2]

---

[2]     In a similar ADA case brought in this District, a sister court found that it could not determine whether "the allegedly wrongful behavior" could "reasonably be expected to occur" without limited jurisdictional discovery. *Mercer* v. *Jericho Hotels, LLC*, No. 19 Civ. 5604 (VSB), 2019 WL 6117317 at *4 (S.D.N.Y. Nov. 18, 2019) (quoting *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The court observed that "suspicion [was] particularly warranted" where there was "near word-for-

### B.     The Court Lacks Personal Jurisdiction over Defendant

The Court recognizes that, in instances in which it determines that it lacks subject matter jurisdiction, the preferred course of action is to refrain from considering other arguments proffered by the movant.  *See, e.g., Cornwell v. Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (observing that dismissal for lack of subject matter jurisdiction "moots, and thus terminates, all other pending motions"). However, Defendant has raised a separate basis to dismiss Plaintiff's case, and it concerns the Court's lack of personal jurisdiction over Defendant.  Given both the relatively few cases in this Circuit that have considered these issues in the ADA website context, and Defendant's arguments regarding the significance of the subject matter and personal jurisdiction analyses (*see* Dkt. #30), the Court thinks it prudent to address both bases for dismissal.  The Court addresses its lack of personal jurisdiction over Defendant in the remainder of this Opinion.

### 1.     Applicable Law

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over

---

word overlap" beween the defendant's discussion of its remediation efforts and the declaration submitted by the defendant in *Diaz.  Id.*  Defendant's submissions in this case do not present the same concerns, given that, as described above, the Douglas Declaration provides a detailed summary of Defendant's efforts to identify and remediate the access barriers alleged in the Complaint.  (Douglas Decl. ¶¶ 16-18).

the defendant." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  To survive a motion to dismiss, a plaintiff need only provide "legally sufficient allegations of jurisdiction." *Id.*  A plaintiff makes such a showing through "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.* at 567 (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Plaintiff's jurisdictional allegations "'are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]'" *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).  Where a court does not hold an evidentiary hearing on the jurisdictional question, it may, nevertheless, consider matters outside the pleadings.  *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013).

To determine whether the exercise of personal jurisdiction is proper, a court conducts a two-part inquiry:  *First*, a court looks at whether there is a basis for personal jurisdiction under the laws of the forum state.  *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).  Here, the relevant inquiry centers on New York's long-arm statute, which provides, in relevant part, that a court may exercise personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction.  N.Y. C.P.L.R. § 302(a)(1).  Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the

17

non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity." *Aquiline Cap. Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (internal citations and quotations omitted).

*Second*, a court must examine whether the exercise of personal jurisdiction comports with due process. *Licci*, 732 F.3d at 168. "Due process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 169 (internal citation and quotations omitted). Put differently, due process is not violated when a defendant is "haled into court in a forum State based on his own affiliation with the state." *Walden* v. *Fiore*, 571 U.S. 277, 286 (2014).

2.   **Discussion**

Defendant is a Nebraska corporation headquartered in Omaha, Nebraska, with no physical presence or operations in New York. (Douglas Decl. ¶ 4).[3] Defendant argues that New York's long-arm statue does not subject it to this Court's jurisdiction, and that even if it were subject to personal jurisdiction under New York law, the exercise of jurisdiction would be

---

[3]   Aside from "an exceptional case," a corporation is at home — and thus subject to general jurisdiction, consistent with due process — only in the state of its incorporation or principal place of business. *Daimler AG* v. *Bauman*, 571 U.S. 117, 137-39 & n.19 (2014); *see Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[I]n our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business — the 'paradigm' cases."). The Court agrees with Defendant that, as a Nebraska corporation with physical headquarters in Omaha, Nebraska, it is not "at home" in New York for the purposes of general jurisdiction. (Def. Br. 19). Accordingly, the Court will look to whether specific jurisdiction exists.

incompatible with federal due process requirements.  (Def. Br. 15-16; Douglas Decl. ¶ 4).  As stated above, New York's long-arm statute permits a court to exercise personal jurisdiction over a non-domiciliary if: (i) the non-domiciliary transacts business in New York state; and (ii) the claims against the non-domiciliary arise out of that business activity.  *See Aquiline Cap. Partners LLC*, 861 F. Supp. 2d at 386 (discussing N.Y. C.P.L.R. § 302(a)(1)).  In the Complaint, Plaintiff asserts that Defendant is subject to personal jurisdiction because its alleged conduct was committed within this District, and because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District.  (Compl. ¶ 9).

When considering whether to exercise personal jurisdiction over a defendant because of its website, the Second Circuit admonishes district courts to look to the degree of interactivity and commercial nature of the exchange of information that occurs on the site.  *See Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 252 (2d Cir. 2007) ("We think that a website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant 'transacts any business' in New York.").  A website's degree of "interactivity," as explained by the Second Circuit, exists on a spectrum.  *See id.* at 251.  At one end of the spectrum are passive websites, which do not confer jurisdiction.  These websites generally "only provide[ ] information about services for sale and contact information for the seller, without any ability to directly purchase the services through the website."  *A.W.L.I. Grp., Inc.* v. *Amber Freight Shipping Lines*, 828 F. Supp. 2d

557, 568 (E.D.N.Y. 2011).  On the other end are fully interactive websites, which "knowingly transmit goods or services to users in other states," and are sufficient to confer personal jurisdiction pursuant to section 302(a)(1) where they purposefully direct activity into a forum state.  *Royalty Network Inc.* v. *Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009).  "Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction."  *Citigroup Inc.* v. *City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).

Here, Plaintiff alleges that Defendant's Website offers products and services for online sale and general delivery to the public, including the delivery of goods to New York State.  (Compl. ¶¶ 21-22).  Based on those allegations, the Court must determine whether Plaintiff has "established a reasonable probability that [the Website has] been actually used to effect commercial transactions with customers in New York."  *Alibaba Grp. Holding Ltd.* v. *Alibabacoin Found.*, No. 18 Civ. 2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018) (internal citation and quotation marks omitted).  "Even the existence of an interactive 'patently commercial' website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York."  *Id.* (quoting *ISI Brands, Inc.* v. *KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87-88 (E.D.N.Y. 2006)).  As this Court has observed, the fact that a plaintiff can

access a defendant's website in New York, "standing alone," does not constitute transacting business in the state for the purposes of New York's long-arm statute. *Diaz*, 2019 WL 2357531, at *7 (citing *Best Van Lines*, 490 F.3d at 250).

Defendant argues that its "explicit policies" prevent Plaintiff and similar customers from successfully making a purchase on its Website by virtue of their residence in New York. (Def. Br. 15). Defendant's delivery policy permits deliveries to: (i) customers within a 300-mile radius of one of Defendant's physical retail locations; and (ii) customers who have obtained a store credit card (an "NFM Card") from Defendant. (Douglas Decl. ¶¶ 6-7). Defendant's store nearest to New York City is approximately 1,100 miles away in Des Moines, Iowa. (*Id.* at ¶ 6). And NFM Cards are only available to customers residing in certain states, not including New York. (*Id.* at ¶ 7). Accordingly, a new customer residing in New York, such as Plaintiff, could not make a purchase from the Website for shipment or delivery to New York. (*See id.* at ¶ 8).[4]

---

[4]     In his February 6, 2020 letter opposing Defendant's request for a pre-motion conference on its anticipated motion to dismiss, Plaintiff argued that Defendant was subject to personal jurisdiction in New York as its Website "explicitly state[d] that its shipping policy covers New York." (Dkt. #16). As the Website is incorporated by reference in the Complaint, and thus properly before the Court on a motion to dismiss, the Court reviewed the Website's shipping and delivery policy in light of this disagreement between the parties. *See Del-Orden* v. *Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *12 n.3 (considering the website at issue "in its present configuration" when resolving a defendant's motion to dismiss ADA claims). The Website indicates that Defendant delivers to "47 states (excluding Alaska, Hawaii and California)" but states that a "NFM Card may be required for purchases in some areas." *See* Nebraska Furniture Mart, *Shipping and Delivery*, https://www.nfm.com/shipping-and-delivery (last visited Dec. 6, 2020). The Douglas Declaration acknowledges that the Website indicates that delivery can be made to "47 states," but represents that in practice, a new customer in New York, such as Plaintiff, who has not previously purchased an

Defendant argues that this case is akin to *Diaz*, wherein this Court declined to exercise personal jurisdiction over a defendant who established that their website would not allow delivery to any New York zip code.  (Def. Br. 18 (citing *Diaz*, 2019 WL 2357531, at *7)).  The Court agrees that the facts here are similar to those in *Diaz*, and based on the record before it, the Court finds that Defendant does not target New York residents through its Website.  (*See* Douglas Decl. ¶¶ 6-8).  *See Girl Scouts of U.S.* v. *Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) (summary order) (holding that the court could not exercise jurisdiction where defendants "manifested no intent specifically to target New York supporters or to avail themselves of the particular benefits of New York law" through their website); *cf. Chloe* v. *Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (finding personal jurisdiction when defendant "operated a highly interactive website offering [] bags for sale to New York consumers"); *Camacho*, 2019 WL 6528974, at *7 (concluding that New York's long-arm statute was satisfied where complaint was interpreted to allege that defendant targeted its website at New Yorkers by using its website to solicit applications during college fairs held in New York State).  To the extent Plaintiff would argue that Defendant's "national web presence" targets New York, such national presence, standing alone, is insufficient to support the exercise of personal jurisdiction.  *Mercer* v. *Rampart Hotel Ventures, LLC*, No. 19 Civ. 3551 (PAE), 2020 WL 882007, at *5-6 (S.D.N.Y. Feb. 24, 2020) (finding that

---

NFM card while residing in another state, would be unable to make a purchase from the Website for shipment or delivery to New York.  (Douglas Decl. ¶ 8).

defendant's website, which was not alleged to "target or have any special connection to New York," was insufficient to support jurisdiction under New York's long arm statute); *see also Best Van Lines, Inc.*, 490 F.3d at 250 (collecting cases concluding "that the posting of defamatory material on a website accessible in New York does not, without more, constitute transact[ing] business in New York for the purposes of New York's long-arm statute").

Because Plaintiff has failed to establish that Defendant transacts any business in New York, if it were found that the Court had subject matter jurisdiction over this case, it would nonetheless dismiss for want of personal jurisdiction.[5]

## CONCLUSION

Given the absence of jurisdiction, the Court dismisses the claims against Defendant without prejudice.[6]  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     December 18, 2020
           New York, New York

                                        *Katherine Polk Failla*
                                        _____
                                        KATHERINE POLK FAILLA
                                        United States District Judge

---

[5]     Because the exercise of personal jurisdiction is proscribed by New York's long-arm statute, the Court does not consider whether the exercise of personal jurisdiction over Defendant would be consistent with due process.

[6]     As the Court has dismissed Plaintiff's federal causes of action, it declines to exercise any supplemental jurisdiction over Plaintiff's NYCHRL claims.  *See Marcus* v. *AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (citations omitted)); *Harty* v. *Nyack Motor Hotel Inc.*, No. 19 Civ. 1322 (KMK), 2020 WL 1140783, at *5 (S.D.N.Y. March 9, 2020) (declining to exercise supplemental jurisdiction over plaintiff's NYSHRL claim following dismissal of federal claims).